**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CARLOS JAMES MIERA, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-21-70-HE** |
| | ) | |
| **MATT MCDONALD,** | ) | |
| **Interim Warden,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

<u>**RESPONSE IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS**</u>

The Attorney General of the State of Oklahoma, Mike Hunter, appearing on behalf of the above-named Respondent, in response to the Petition for a Writ of Habeas Corpus on file herein shows the Court as follows:

1.     Petitioner, Carlos James Miera Jr., an inmate in the custody of the Oklahoma Department of Corrections, appearing *pro se*, has filed with this Court a petition seeking federal habeas corpus relief. Doc. 1, Petition, p. 1.[2]

2.     Petitioner is currently incarcerated pursuant to judgments and sentences entered, following a jury trial, in the District Court of Kay County, Case No. CF-2015-702, for the crimes of Burglary in the First Degree, After Former Conviction of a Felony

---

[1] The currently listed Respondent in this case is Scott Crow, Director of the Oklahoma Department of Corrections. However, as reflected in Petitioner's recent change of address notice (Doc. 10), since the filing of his habeas petition, Petitioner has been transferred to the Jim E. Hamilton Correctional Center, a state institution. Accordingly, Matt McDonald, that facility's interim warden, should be substituted as Respondent.

[2] Because the Petition's pagination varies, Respondent will use this Court's ECF numbering when citing to it.

("AFCF"), in violation of Okla. Stat. tit. 21, § 1431 (2011) (Count 1); Conspiracy, AFCF, in violation of Okla. Stat. tit. 21, § 421 (2011) (Count 2); Assault with a Dangerous Weapon, AFCF, in violation of Okla. Stat. tit. 21, § 645 (2011) (Count 3); and Attempted Extortion Induced by Threats, AFCF, in violation of Okla. Stat. tit. 21, § 1482 (2011) (Count 4). Exhibit "1," OCCA Direct Appeal Opinion, p. 1. The jury recommended sentences of ten years imprisonment on Count 1, two years imprisonment on Count 2, ten years imprisonment on Count 3, and two years imprisonment on Count 4. Exhibit 1 at 1. At formal sentencing, the state district court sentenced Petitioner according to the jury's recommendations and ran Counts 1 and 3 concurrently with each other, but consecutively to Counts 2 and 4, which were ordered to run concurrently with each other. Exhibit 1 at 1. The state district court further ordered that all counts in this case were to run consecutively to Petitioner's revoked eight-year sentence in Kay County District Court Case No. CF-2011-199. Exhibit 1 at 1 n.1.

3. Petitioner timely appealed his convictions to the Oklahoma Court of Criminal Appeals ("OCCA"). Exhibit "2," Brief of Appellant, pp. i–ii; Exhibit "3," Brief of Appellee. On March 8, 2018, the OCCA affirmed Petitioner's judgments and sentences. Exhibit 1 at 1, 11.

4. On July 31, 2018, Petitioner filed an application for post-conviction relief in the District Court of Key County. Exhibit "4," Application for Post-Conviction Relief, p. 1; Exhibit "5," State's Response to Petitioner's Application for Post-Conviction Relief. On June 30, 2020, the state district court denied Petitioner's application for post-conviction relief. Exhibit "6," State District Court Order Denying Post-Conviction Relief, p. 1.

Petitioner appealed the state district court's denial of relief and, on November 20, 2020, the OCCA affirmed the denial of post-conviction relief. Exhibit "7," Order Affirming Denial of Post-Conviction Relief, pp. 1, 4.

5.      Petitioner filed his petition in this Court on February 1, 2021.

6.      As more fully explained below, Petitioner raises a partially unexhausted claim in Ground 1. This claim is properly before this Court only to the extent it was raised in state court. It appears Petitioner exhausted state remedies on Ground 2 during state post-conviction proceedings. Below, Respondent explains more specifically the extent to which Petitioner's claims are, or are not, exhausted.

7.      The petition is timely.

8.      The following transcripts are available: Pretrial and Motion Hearings on July 18, 2016 and August 15, 2016; Revocation hearing held April 1, 2016; Preliminary hearing (2 volumes) held January 13 & 19, 2016; Transcript of Trial Proceedings (3 volumes) held August 16–18, 2016; and Transcript of Sentencing held August 22, 2016. Complete copies of these transcripts—as well as the trial exhibits and original record—are being conventionally filed along with this Response. Relevant portions of the transcripts are attached to this Response as Exhibit "8." Relevant portions of the original record are attached to this Response as Exhibit "9."

9.      Respondent is not aware of any proceedings that have been recorded but not transcribed.

10.     Petitioner has not requested an evidentiary hearing in this Court, nor is he entitled to one. As to his claims that are exhausted and not procedurally barred, this Court's

review of Petitioner's habeas petition is limited to the record that was before the OCCA when it adjudicated his claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Furthermore, as will be shown, Petitioner fails to show that the OCCA's adjudication of his claims resulted in unreasonable determinations of law or facts under 28 U.S.C. § 2254(d). For these reasons, Petitioner is not entitled to an evidentiary hearing in federal court. *See Pinholster*, 563 U.S. at 181–86; *Jones v. Warrior*, 805 F.3d 1213, 1222 (10th Cir. 2015); *Boyle v. McKune*, 544 F.3d 1132, 1135 (10th Cir. 2008). To the extent Petitioner raises a claim that in Ground 1 that is different in substance from the claim raised on direct appeal, Petitioner is not entitled to an evidentiary hearing on an unexhausted and barred claim. *See Thacker v. Workman*, 678 F.3d 820, 836 (10th Cir. 2012) ("Because . . . Thacker's claim is procedurally barred, the district court did not err in failing to conduct an evidentiary hearing.").

## **STATEMENT OF THE FACTS**

This case involves the late-night home invasion of Travis Gooden by Petitioner and his cohort, Moses Blackwell Hawk, a.k.a "Toma hawk,"[3] in Blackwell, Oklahoma. Exhibit 8, Tr.I 138. Mr. Gooden had just put his three children (aged seven and younger) to sleep on September 8, 2015, when Mr. Hawk, followed by Petitioner, entered unannounced and uninvited through Mr. Gooden's front door; it was approximately 11:00 p.m. *Id.* at 138–39. The family were all in the room into which the front door opened, the children sleeping on a floor mattress. *Id.* at 139. Mr. Gooden recognized Mr. Hawk, but did not know

---

[3] "Toma Hawk" is the alias by which Mr. Gooden knew Mr. Hawk and the moniker often used for Mr. Hawk during trial. *See, e.g.*, Exhibit 8, Tr.I 138.

Petitioner. *Id.* at 139–40, 170. Petitioner was shirtless, bald, and had a very large black bird-shaped tattoo on his chest. *Id.* at Tr.I 147–50, 172–73.

Mr. Hawk almost immediately placed Mr. Gooden in a choke-hold. *Id.* at 153. Mr. Hawk and Petitioner were there to deliver "an ass-whooping that [Mr. Gooden] needed because [Mr. Gooden] snitched on [a former cell-mate called David Jones] from [Mr. Gooden's] past crimes." *Id.* at 140, 147, 153. Mr. Gooden quietly convinced the men to go out onto the porch where they could talk. *Id.* at 154. Mr. Hawk demanded $200.00 per week, "or else he's coming back." *Id.* at 153. After the men were out on the porch, Petitioner, holding a pocketknife, began "pacing back and forth, tapping the knife on his head, and saying he liked the smell of blood" *Id.* at 154. Petitioner asked permission of Mr. Hawk to "cut" Mr. Gooden right then, but Mr. Hawk refused. *Id.* at 155. As they were leaving, Petitioner told Mr. Gooden he was "going to slice [Mr. Gooden's] throat and [Mr. Gooden's] children's throats." *Id.* Mr. Hawk warned Mr. Gooden he "was going to come back and destroy everything [Mr. Gooden] owned if [Mr. Gooden] didn't pay." *Id.* at 158. The men then ran to the next-door home of Mr. Gooden's neighbor, David Davis. *Id.* at 158, 176. Mr. Gooden called his girlfriend and made arrangements to get his children to a safe place, then set out to get help from law enforcement. *Id.* at 160.

Blackwell Police Sergeant Jason Lunn was out on patrol around 11:00 p.m. the same night when Mr. Gooden flagged him down as Sergeant Lunn was stopped at a stop sign. Exhibit 8, Tr.II 60. Mr. Gooden reported the crimes to Sergeant Lunn, then followed him to the Blackwell Police Department to begin the investigative process. *Id.* at 61–62. Mr. Gooden told Sergeant Lunn about Mr. Hawk's cohort being shirtless and having a large

chest tattoo. Exhibit 8, Tr.I 173. Because he had seen the two men run directly to the home of his next-door neighbor, David Davis (whom Mr. Gooden barely knew), Mr. Gooden initially named Mr. Davis as Mr. Hawk's partner. Exhibit 8, Tr.I 158, 176, Tr.II 63, 65, 73, 83. However, after Sergeant Lunn showed Mr. Gooden a bare-chested photo of Petitioner that also revealed the tattoo, compared with photos of Mr. Davis, and Mr. Hawk, Mr. Gooden was able to positively identify Petitioner as the man with Mr. Hawk. Exhibit 8, Tr.I 150–52, 173, 179–80, Tr.II 77; State's Trial Exhibit A. Mr. Gooden then immediately corrected his written statement to reflect his initial misidentification, and Petitioner was arrested the next morning. Exhibit 8, Tr.II 21, 27, 66–67; Defendant's Trial Exhibit 2.

Respondent will present additional facts as they relate to the grounds for relief raised by Petitioner.

## STANDARD OF REVIEW

Federal court habeas corpus review of state court decisions is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). When a state court has previously adjudicated a claim on the merits, federal courts are prohibited from granting habeas relief unless the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law refers only to the holdings, and not the dicta, of the United States Supreme Court at the time of the state court decision. *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008). Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings." *Id.*

A state court decision is contrary to clearly established federal law when it reaches a conclusion opposite to that of the Supreme Court on a question of law or decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

A state court decision involves an unreasonable application of clearly established federal law when the state court correctly identifies the governing legal principle but applies it to the facts of the particular case in an unreasonable manner. *Valdez v. Bravo*, 373 F.3d 1093, 1096 (10th Cir. 2004). Therefore, under this clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

In *Harrington v. Richter*, 562 U.S. 86, 101–02 (2011), the Supreme Court criticized a federal court of appeals for effectively reviewing a petitioner's ineffective assistance of counsel claim de novo and then declaring that the state court's decision was an unreasonable application of clearly established federal law. The Supreme Court made clear that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."

*Id.* at 101 (internal quotation marks omitted). The standard set by the AEDPA was meant to be difficult to meet. *Id.* at 102. Thus, a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Even a strong case for relief on direct review does not mean that the state court's denial of relief was unreasonable. Further, the standard set by AEDPA is even more difficult to meet when the rule established by the Supreme Court is a general one. *Id.* at 101. A habeas petitioner's ability to obtain relief is limited because habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quotation marks omitted).

When state courts address only one part of a multi-prong analysis—even if the state court finds that prong to be dispositive—habeas review of the unaddressed prongs is *de novo*. *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (reviewing *de novo* the prejudice prong of an ineffective assistance of counsel claim because the state court denied relief based on the deficiency prong); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Smith v. Sharp*, 935 F.3d 1064, 1072 (10th Cir. 2019) ("[I]n cases in which a state court addresses only one prong of a multi-prong analysis, the Supreme Court requires that federal habeas courts address the other prongs de novo.").[4]

---

[4] Respondent would contend that *Rompilla* has been critically undermined by the Supreme Court's holding in *Richter* that

As for 28 U.S.C. § 2254(d)(2), "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to Petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Byrd v. Workman*, 645 F.3d 1159, 1171–72 (10th Cir. 2011) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004)). However, § 2254(d)(2) "is a daunting standard—one that will be satisfied in relatively few cases." *Id.* at 1172 (quoting *Taylor*, 366 F.3d at 1000). The state court's factual findings are not unreasonable so long as "reasonable minds reviewing the record might disagree about the finding in question." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Finally, state court determinations of fact "shall be presumed correct" unless Petitioner rebuts the presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Thus, a state court's decision cannot be said to be based on an unreasonable determination of the facts until a petitioner has shown by clear and convincing evidence

---

Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

562 U.S. at 98. *See also Smith*, 935 F.3d at 1073 n.2 (noting tension between *Richter* and the *Wiggins/Rompilla* line of cases). However, the Supreme Court has not explicitly overruled *Rompilla*, thus its holding remains binding. *See Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." (quoting *Hohn v. United States*, 524 U.S. 236, 252–53 (1998))).

that the state court's factual determination was incorrect. *Black v. Workman*, 682 F.3d 880, 896–97 (10th Cir. 2012) (refusing to grant relief under § 2254(d)(2) because the petitioner had failed to present clear and convincing evidence to rebut a state court's factual finding); *accord Ben-Yisrayl v. Buss*, 540 F.3d 542, 549 (7th Cir. 2008) (holding § 2254(e)(1) "provides the mechanism for proving unreasonableness" under § 2254(d)(2)); *Trussell v. Bowersox*, 447 F.3d 588, 591 (8th Cir. 2006) (requiring the petitioner to satisfy § 2254(e)(1) in order to obtain relief under § 2254(d)(2)); *but see Wood*, 558 U.S. at 300–01 (declining to decide the relationship between §§ 2254(d)(2) and 2254(e)(1); *Grant v. Trammell*, 727 F.3d 1006, 1024 n.6 (10th Cir. 2013) (same); *Taylor*, 366 F.3d at 999–1000 (holding that § 2254(d)(2) applies to challenges based solely on the state court record whereas § 2254(e)(1) applies when the petitioner relies upon new evidence).

As a final matter, this Court generally may not grant relief on a claim in federal habeas unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "A claim has been exhausted when it has been 'fairly presented' to the state court." *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "Fair presentation requires more than presenting all the facts necessary to support the federal claim to the state court or articulating a somewhat similar state-law claim." *Id.* (quotation marks omitted). While "[t]he petitioner need not cite book and verse on the federal constitution," he must have "raised the substance of the federal claim in state court." *Id.* (quotation marks omitted).

"Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies." *Id.* at 1012. However, if "the

court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Cannon v. Gibson*, 259 F.3d 1253, 1265 (10th Cir. 2001) (internal quotation marks omitted). This results in an "anticipatory procedural bar," where "the federal courts apply [a] procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Anderson v. Sirmons*, 476 F.3d 1131, 1140 n. 7 (10th Cir. 2007) (internal quotation marks omitted).  Under Oklahoma law, claims raised in a second or successive post-conviction application are generally barred, a rule the Tenth Circuit has repeatedly found to be independent and adequate to bar federal review. *Pavatt v. Carpenter*, 928 F.3d 906, 929 (10th Cir. 2019) (*en banc*), *cert. denied*, *Pavatt v. Sharp*, 140 S. Ct. 958 (2020).

Procedural default based on an anticipatory procedural bar can be overcome only by establishing cause and prejudice or a fundamental miscarriage of justice. *See Cummings v. Sirmons*, 506 F.3d 1211, 1223 (10th Cir. 2007). The "fundamental miscarriage of justice" exception "is a markedly narrow one, implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (quotation marks omitted and alteration adopted).

## ARGUMENT AND AUTHORITY

## PROPOSITION I

**PETITIONER'S DUE PROCESS CLAIM DOES NOT WARRANT RELIEF BECAUSE THE OCCA'S DETERMINATION THAT THERE WAS NOT A SUBSTANTIAL LIKELIHOOD OF MISIDENTIFICATION WAS NOT CONTRARY TO OR, AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, OR BASED ON AN UNREASONABLE DETERMINATION OF FACT.**

Liberally construing his pleading,[5] Petitioner first argues that he was denied due process of law by the use of an overly suggestive photo-lineup. Doc. 1, Petition, p. 9. Properly viewing this claim as it was raised on direct appeal, the OCCA did not unreasonably deny relief. Habeas relief must be denied.

### A. The OCCA's Adjudication of Petitioner's Claim.

When Petitioner challenged the lineup on direct appeal,[6] the OCCA rejected his claim as follows:

> In Proposition One, Appellant contends that the victim's identification of him was the product of an impermissibly suggestive identification procedure. We find that Appellant has not shown that the trial court abused its discretion when it found the victim's identification of him was sufficiently reliable and admitted the evidence at trial. *Myers v. State*, 2006 OK CR 12, ¶ 26, 133 P.3d 312, 323; *see also Manson v. Brathwaite*, [432 U.S. 98, 114 (1977)] ("[R]eliability is the linchpin in determining the admissibility of identification testimony."). Reviewing the totality of the circumstances, there was not a substantial likelihood of misidentification. *Perry v. New Hampshire*, 565 U.S. 228, 238–39 [(2012)]; *Simmons v. United States*, 390 U.S. 377, 383–84 [(1968)]; *Harmon v. State*, 2011 OK CR 6, ¶ 43, 248 P.3d 918, 936. The victim had an excellent opportunity to observe Appellant

---

[5] "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[6] The extent to which the claim has now changed on habeas is discussed by Respondent below.

during the criminal acts and there was a relatively short period of time between the offenses and the identification procedure. The victim paid great attention during the offenses, his initial description was entirely accurate, and he had an exceptional level of certainty in his identification. As the trial court's determination that there was not a substantial likelihood of misidentification was not clearly against the weight and effects of the facts presented, we find that the trial court did not abuse its discretion when it admitted the victim's identification of Appellant at trial. Proposition One is denied.

Exhibit 1 at 3.

### B. Clearly Established Federal Law.

To implicate the federal Due Process Clause, a petitioner must show that pre-trial eyewitness identification was "procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry v. New Hampshire*, 565 U.S. 228, 248 (2012). These "due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Id.* at 238–39. Even then, "[a]n identification infected by improper police influence, [Supreme Court] case law holds, is not automatically excluded." *Id.* at 232. Rather, the trial court "must screen the evidence for reliability pretrial." *Id.* The trial court must disallow presentation of the evidence only if there is "a very substantial likelihood of irreparable misidentification." *Id.* (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). On the other hand, "if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth." *Id.*

In his Petition, Petitioner relies on *United States v. Wade*, 388 U.S. 218 (1967), to argue that the lineup procedure by which Mr. Gooden first identified him was overly

suggestive. Doc. 1, Petition, p. 12. Petitioner correctly notes that the Supreme Court in

*Wade* identified a number of troublingly suggestive techniques, including situations where

> all in the lineup but the suspect were known to the identifying witness, that
> other participants in a lineup were grossly dissimilar in appearance to the
> suspect, that only the suspect was required to wear distinctive clothing which
> the culprit allegedly wore, that the witness is told by the police that they have
> caught the culprit after which the defendant is brought before the witness
> alone or is viewed in jail, that the suspect is pointed out before or during  a
> lineup, and that the participants in the lineup are asked to try an article of
> clothing which fits only the suspect.

*Wade*, 388 U.S. at 233 (internal footnotes and citations omitted). Petitioner then identifies

what he alleges are violations of *Wade*'s "factor[s]" and claims "**[t]here is _no_ cure for this**

**prejudice**." Doc. 1, Petition, pp. 12–13 (emphasis in original). The Court in *Wade*,

however, directly noted that a determination that a lineup procedure was overly suggestive

is the beginning of the analysis, not the end, holding that "a per se rule exclusion of

courtroom identification would be unjustified." *Wade*, 388 U.S. at 240.[7]

Instead, from *Wade* to *Perry*, the Supreme Court has recognized a series of factors

for trial courts to consider when determining whether to allow subsequent in-court

identification following an overly suggestive lineup procedure, including "the opportunity

of the witness to view the criminal at the time of the crime, the witness' degree of attention,

the accuracy of his prior description of the criminal, the level of certainty demonstrated at

the confrontation, and the time between the crime and the confrontation." *Perry*, 565 U.S.

---

[7] Indeed, Petitioner appears to at least somewhat recognize that it is not a per se rule. *See* Doc. 1,
Petition, 13 (arguing that "[t]estimony must be excluded when the admissions would violate due
process *and where there is a substantial likelihood of misidentification*" (emphasis added)).

at 239 n.5 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). *Accord Neil v. Biggers*, 409 U.S. 188, 199–200 (1972); *Wade*, 388 U.S. at 241.[8]

### C. Transformation Issues with Petitioner's Due Process Claim.

Before applying § 2254(d) to Petitioner's due process claim, Respondent must discuss the extent to which the claim has changed from state court. The bones of Petitioner's claim as raised now—that his due process rights were violated by the admission of an identification allegedly tainted by overly suggestive pre-trial identification procedures—was raised in substance on direct appeal. Exhibit 1 at 3. However, Petitioner relies on different authority and makes what he believes to be a different and stronger version of this claim here, relying on *Wade*. Doc. 1, Petition, pp. 9–12. Indeed, that Petitioner understands this to be a significant alteration of his claim is clear from Ground 2 of the Petition and his post-conviction application in state court, where he argues (and argued, respectively) that direct appeal counsel was unconstitutionally ineffective for failing to argue *Wade*. Doc. 1, Petition, p. 15; Exhibit 4 at 8.

Petitioner is correct that his claim is partially transformed. Specifically, on direct appeal, Petitioner argued that the lineup was overly suggestive but admitted that, "even an improperly suggestive identification may be admissible if, under the totality of the circumstances, the [in court] identification was [independently] reliable . . . ." Exhibit 2, p. 9. The direct appeal brief went on to argue that Mr. Gooden's identification of Petitioner was not independently reliable. Exhibit 2, pp. 9–11. On habeas, however, as indicated

---

[8] Notably, Petitioner cites both *Brathwaite* and *Biggers* in his Petition although he does not acknowledge the factors used by the Supreme Court in those cases. Doc. 1, Petition, p. 13.

above, Petitioner repeatedly suggests that *Wade* established a per se rule of exclusion as to even an in-court identification where pre-trial identification procedures were unduly suggestive. Doc. 1, Petition, pp. 12–13. Clearly, this was not the argument raised to the OCCA, as the direct appeal brief actually admitted that an in-court identification could be independently reliable.

To the extent Petitioner now raises a claim of per se exclusion, his claim is unexhausted, as Petitioner did not directly raise a *Wade*-based claim of per se exclusion in either his direct appeal or post-conviction proceedings.[9] *See Bland*, 459 F.3d at 1011 (quoting *Picard*, 404 U.S. at 275) ("A claim has been exhausted when it has been 'fairly presented' to the state court."); *see also Fairchild v. Workman*, 579 F.3d 1134, 1152 (10th Cir. 2009) (where a habeas petitioner transforms a claim from state court, placing it in a different legal posture, the transformed claim is unexhausted). Moreover, the new version of Petitioner's claim is subject to an independent and adequate anticipatory procedural bar based on Oklahoma's restrictions on second post-conviction applications. *See Pavatt*, 928 F.3d at 929. Petitioner does not acknowledge that this transformed claim is unexhausted or allege cause and prejudice. *See Cummings*, 506 F.3d at 1223. While Petitioner claims several times in his Petition that he is "actually and factually innocent," *see* Doc. 1, Petition, pp. 3, 9, 11, Petitioner does not appear to be making a separate, gateway, claim of actual innocence for the purposes of bypassing procedural bars. *See Schlup v. Delo*, 513 U.S. 298,

---

[9] Although Petitioner, in his post-conviction application, argued that direct appeal counsel was unconstitutionally ineffective for failing to raise a *Wade*-based claim, he did not make an independent claim based on *Wade*. *See* Exhibit 4 at 3, 8.

324 (1995) (holding that a colorable claim of actual innocence requires "*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—*that was not presented at trial*." (emphasis added)). Petitioner does not appear to include new evidence, or argue based on evidence not before the trial court, in support of a gateway claim of actual innocence.

Thus, the claim properly before this Court is the one raised to the OCCA—that the pretrial identification procedures were overly suggestive and that the in-court identification was not independently reliable. *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2560 (2018) (admonishing the Ninth Circuit for considering arguments not made to the state court). Setting aside Petitioner's focus on *Wade* and his erroneous belief that it established a rule of per se exclusion, Petitioner appears also to challenge the OCCA's merits determination that the totality of the circumstances did not indicate a substantial likelihood of misidentification. *See* Doc. 1, Petition, pp. 10–14 (detailing the circumstances before and after Mr. Gooden's identification of him, essentially arguing that the totality of the circumstances indicated irreparable misidentification). To this extent, the substance of Petitioner's claim was addressed on the merits by the OCCA. In this form, the claim was exhausted for the purposes of federal habeas review, and Respondent addresses the claim in that form under the rubric of § 2254(d) below.

### D. The OCCA's evaluation of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact.

The AEDPA precludes relief because the OCCA's decision below was not contrary to, or an unreasonable application of, clearly established federal law by the Supreme Court,

nor was it based on an unreasonable determination of the facts before it. 28 U.S.C. § 2254(d).

As background, as discussed in Respondent's Statement of the Facts, Blackwell Police Sergeant Jason Lunn was out on patrol around 11:00 p.m. the night of the crimes when Mr. Gooden flagged him down as Sergeant Lunn was stopped at a stop sign. Exhibit 8, Tr.II 60. Mr. Gooden reported the crimes to Sergeant Lunn, then followed him to the Blackwell Police Department to begin the investigative process. *Id.* at 61–62. Mr. Gooden told Sergeant Lunn about Mr. Hawk's cohort being shirtless and having a large chest tattoo. Exhibit 8, Tr.I 173. Because he had seen the two men run directly to the home of his next-door neighbor, David Davis (whom Mr. Gooden barely knew), Mr. Gooden initially named Mr. Davis as Mr. Hawk's partner. Exhibit 8 1, Tr.I 158, 176, Tr.II 63, 65, 73, 83. However, after Sergeant Lunn showed Mr. Gooden a bare-chested photo of Petitioner that also revealed the tattoo, compared with photos of Mr. Davis, and Mr. Hawk, Mr. Gooden was able to positively identify Petitioner as the man with Mr. Hawk. Exhibit 8, Tr.I 150–52, 173, 179–80, Tr.II 77; State's Trial Exhibit A. Mr. Gooden then immediately corrected his written statement to reflect his initial misidentification, and Petitioner was arrested the next morning. Exhibit 8, Tr.II 21, 27, 66–67; Defendant's Trial Exhibit 2.

Prior to trial, Petitioner filed a motion to suppress Mr. Gooden's identification on the theory that the lineup procedure was overly suggestive, relying on *Wade*. Exhibit 9, O.R. 79–85. As Petitioner noted on direct appeal, at the hearing on Petitioner's motion to suppress, the trial court agreed "[t]here's no question that the confrontation procedure was

suggestive." Exhibit 8, Mot. Tr. 7/18/2016 27; Exhibit 2 at 7. The trial court ultimately concluded, "based on the totality of the circumstances," that

> It's inconceivable to [the court] that [Mr. Gooden] would see a picture showing a tattoo then go, yeah, now I remember the tattoo. It would be more likely, I think, for him to go: The guy in my house didn't have a tattoo, that's a tattoo. I know what a tattoo looks like.

Exhibit 8, Mot. Tr. 7/18/2016 27. The issue ultimately before the trial court was not whether the photographic lineup was overly suggestive in violation of *Wade*—all parties agreed it was suggestive—but whether Mr. Gooden's subsequent in-court identification would be so tainted as to render it inadmissible.

And that is the issue the OCCA focused on in the direct appeal. Not whether the lineup procedure was overly suggestive, but whether, independent of the lineup identification, Mr. Gooden's in-court identification of Petitioner was "sufficiently reliable" and whether there was "a substantial likelihood of misidentification" arising from the lineup procedure. Exhibit 1 at 3.[10] In evaluating Petitioner's claim on direct appeal, the OCCA clearly utilized the factors the Supreme Court outlined in *Perry*, noting that Mr. Gooden (1) "had an excellent opportunity to observe [Petitioner] during the criminal acts," (2) "there was a relatively short period of time between the offenses and the identification procedure," (3) Mr. Gooden "paid great attention during the offenses," (4) "his initial description was entirely accurate," and (5) "he had an exceptional level of certainty in his

---

[10] Indeed, as explained above, unlike Petitioner's habeas petition, his direct appeal brief conceded that an in-court identification could be independently reliable based on the totality of the circumstances.

identification." *Id.*; *Perry*, 565 U.S. at 239 n.5. And the OCCA ultimately determined, in accordance with the proper standard, that "there was not a substantial likelihood of misidentification." Exhibit 1 at 3; *Perry*, 565 U.S. at 232.[11]

The record supports the reasonableness of the OCCA's conclusion. At trial, Mr. Gooden testified that, independent of the photo shown to him by Sergeant Lunn, he remembered Petitioner as the man with Mr. Hawk and identified Petitioner in court. Exhibit 8, Tr.I 151–53. Mr. Gooden had a very good opportunity to observe Petitioner during the crime. Petitioner, distinguished from Mr. Hawk by being shirtless and having a large, distinctive tattoo on his chest, was in Mr. Gooden's home and on Mr. Gooden's porch. *Id.* at 147–49, 172–73. The porch light was on. *Id.* at 157. The men were also with Mr. Gooden for about ten minutes, long enough for Mr. Gooden to recognize Petitioner's physical characteristics, one of which (the tattoo) became quite memorable. *Id.* at 150–51, 157, 188. Mr. Gooden's attention during the crime was particularly acute in light of the presence of his children, whose lives were threatened that night. *Id.* at 145–49. So attentive was Mr. Gooden to his surroundings during the episode that he asked his attackers to move outside and away from his children. *Id.* at 153–54. Immediately after the men left, Mr. Gooden phoned his girlfriend, got his children to safety, then reported the incident to police. *Id.* at 160.

---

[11] Petitioner's primary argument, which is unexhausted and thus not properly before this Court, is that *Wade* creates a per se rule of exclusion. Respondent would note that *Wade* itself makes clear this is not the law. *See Wade*, 388 U.S. at 240 ("[A] per se rule exclusion of courtroom identification would be unjustified.").

Although Mr. Gooden's initial identification of his neighbor as the man with Mr. Hawk was inaccurate, it was the photograph of Petitioner—a man he did not know—that all but eliminated any risk of misidentification; Mr. Gooden's memory of Petitioner's prominent tattoo, which he also saw in the photograph, prompted his correction. Exhibit 8, Tr.I 179–80. Mr. Gooden, in fact, testified at trial that he was a "[h]undred percent" sure that he told Sergeant Lunn the man with Mr. Hawk that night had a huge bird-like tattoo on his bare chest, and he gave that information *before* being shown the photograph of Petitioner. *Id.* at 173. Sergeant Lunn, too, testified that Mr. Gooden informed him of Petitioner's tattoo before being shown a photograph of him. Exhibit 8, Tr.II 84. Mr. Gooden also had "[n]o" doubt that the man in the photograph, the man with Mr. Hawk, and Petitioner in the courtroom, were all the same person. Exhibit 8, Tr.I 209. And he gave a solid reason for recalling the details of the men who had barged in on him that night: "Cause [sic] they threatened my kids." *Id.* at 159. Mr. Gooden further positively identified both the picture of Petitioner and the Petitioner himself at trial with specific reference to the tattoo he had observed. *Id.* at 150–52. The time between the crime and Mr. Gooden's identification of Petitioner in the photograph was brief and interrupted only by his calling his girlfriend, getting his children to safety, and flagging down Sergeant Lunn. *Id.* at 160. Furthermore, Mr. Gooden's initial implication of his neighbor was quite reasonably explained by his assumption based on having watched the men retreat to the neighbor's house. Under these circumstances nothing impermissibly suggestive about the photograph created a substantial likelihood of irreparable misidentification of Petitioner such that exclusion of his in-court identification would be required. *Perry*, 565 U.S. at 232.

Moreover, defense counsel thoroughly cross-examined Mr. Gooden about his identification of Petitioner at trial, and exposed all of the weaknesses in the photographic lineup, and Mr. Gooden's initial written police report; counsel openly suggested that Mr. Gooden's neighbor, David Davis, was the real culprit. Exhibit 8, Tr.I 172–73, 176–81, 183–99; Defendant's Trial Exhibit 2. The jury was also properly instructed on eyewitness identification testimony. Exhibit 9, O.R. 146. "Jurors are presumed to follow their instructions." *United States v. Hager*, 149 F.3d 1074, 1086 (10th Cir. 1998).[12]

The OCCA applied the appropriate federal standard to Petitioner's claim and reasonably concluded that, under the totality of the circumstances, Mr. Gooden's identification was not substantially likely to have been a misidentification as a result of an improperly suggestive photographic lineup. Thus, the AEDPA bars relief.

### E. Conclusion

For all these reasons, the OCCA's decision was not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination

---

[12] Indeed, even in his Petition, Petitioner claims not simply that Mr. Gooden misidentified him but that both he and Sergeant Lunn *lied under oath* during their trial testimonies about the sequence of events. *See* Doc. 1, Petition, pp. 11–13. Trial counsel made similar suggestions during his questioning. Exhibit 8, Tr.I 172–73, 176–81, Tr.II 84–86. Evaluating these allegations is the sort of weight and credibility determination that juries are regularly entrusted to make. *See Tapia v. Rodriguez*, 446 F.2d 410, 415 (10th Cir. 1971). *See also United States v. Bass*, 661 F.3d 1299, 1307 (10th Cir. 2011) ("Credibility determinations are the province of the jury and are virtually unreviewable on appeal."); *Russell v. Bryant*, 781 F. App'x 721, 726 (10th Cir. Jul. 11, 2019) (unpublished) ("It was within the jury's purview alone to assess the credibility of these witnesses, and it is not our place to second-guess the jury's assessment."). All unpublished decisions are cited for persuasive value only pursuant to Fed. R. App. P. 32.1 and 10th Cir. R. 32.1(A).

of fact; the AEDPA requires deference and bars relief. 28 U.S.C. § 2254(d). This Court should thus reject this claim and deny relief.

## PROPOSITION II

**ON *DE NOVO* REVIEW, APPELLATE COUNSEL DID NOT PERFORM DEFICIENTLY, AND THE OCCA'S DETERMINATION THAT APPELLATE COUNSEL DID NOT PREJUDICE PETITIONER WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, OR BASED ON AN UNREASONABLE DETERMINATION OF FACT.**

In his second and final ground for relief, Petitioner argues that the performance of his counsel during direct appeal was so deficient as to deny him the effective assistance of appellate counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Doc. 1, Petition, pp. 15–17. The OCCA evaluated the prejudice prong of Petitioner's claim on the merits during post-conviction review. *See* Exhibit 7 at 2–4. Under the AEDPA, deference to the OCCA's decision is thus required unless Petitioner can show that the decision was contrary to, or an unreasonable application of, clearly established federal law, or rested on an unreasonable determination of the facts before it. 28 U.S.C. § 2254(d). Because Petitioner has not made this showing, this Court should defer to the OCCA's decision on prejudice. Furthermore, although the OCCA did not expressly adjudicate the deficient performance prong, Petitioner has not shown deficient performance even on *de novo* review. This Court should reject this ground and deny relief.

### A. Background.

The OCCA rejected this claim on Petitioner's post-conviction appeal as follows:

As set forth in *Logan v. State*, 2013 OK CR 2, ¶ 5, 293 P.3d 969, 973, post-conviction claims of ineffective assistance of appellate counsel are appropriate and are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

Under *Strickland*, a petitioner must show both (1) deficient performance, by demonstrating that counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–89, 104 S. Ct. at 2064–66. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065).

. . .[13]

The remaining issue presented to the District Court was an assertion that appellate counsel was ineffective because she failed to adequately raise a claim concerning a pretrial lineup. The District Court correctly noted that the validity of the pretrial lineup was challenged on direct appeal. We agree with the District Court's conclusion that Petitioner has failed to demonstrate that the failure to present the issue in a different way has resulted in prejudice. *See Allen v. State*, 1995 OK CR 78, ¶ 8, 909 P.2d 836, 839 ("When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed.").

Exhibit 7 at 2–4.

### B. The *Strickland* Standard and AEDPA Deference.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*,

---

[13] The OCCA also evaluated Petitioner's claim that direct appeal counsel failed to properly contest the State's proof of the elements of Burglary. Exhibit 7 at 3. Petitioner has not attempted to raise that ineffective assistance claim in his Petition before this Court.

562 U.S. at 99. "But the petitioner may rebut the presumption that the state court adjudicated the petitioner's claim on the merits." *Smith*, 935 F.3d at 1072. For example, "in cases in which a state court addresses only one prong of a multi-prong analysis, the Supreme Court requires that federal habeas courts address the other prongs de novo." *Id.* (citing *Porter v. McCollum*, 558 U.S. 30, 39 (2009) (per curiam) ("Because the state court did not decide whether [petitioner's] counsel was deficient, we review this element of [petitioner's] *Strickland* claim de novo.")).

The OCCA considered and rejected the claim Petitioner now presents on the merits. However, because the OCCA resolved the claim on the prejudice prong, without specifically addressing the deficient performance prong, the standard of review here is mixed. *Harris v. Sharp*, 941 F.3d 962, 975 (10th Cir. 2019). Review of the deficient performance prong is *de novo*. *Id.* While review of the prejudice prong—which the OCCA did specifically address—is conducted pursuant to § 2254(d) deference. *See id.* at 978 ("Because the OCCA adjudicated the prejudice prong on the merits, the federal district court could have reached the merits of the prejudice issue only if [the petitioner] had cleared the hurdle under 28 U.S.C. § 2254(d)."). Thus, in this case, Petitioner must show (1) that counsel's performance was deficient under *Strickland*, and (2) that the OCCA's determination on *Strickland* prejudice was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

"Even under *de novo review*, the standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105. Under *Strickland*, attorneys are deficient

only "when their mistakes are so serious that they stop functioning as 'counsel' for the purposes of the Sixth Amendment." *Harris*, 941 F.3d at 973. Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In evaluating Petitioner's claim, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

"It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. To avoid this, "every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690).

Review of the prejudice prong, however, is additionally subject to § 2254(d). Even though the OCCA did not specifically make a finding as to appellate counsel's performance, thus subjecting this portion of his claim to *de novo* review, and even if Petitioner were to make a showing that counsel's performance was deficient, because the OCCA determined on the merits that counsel's performance did not prejudice Petitioner, the OCCA's decision on that point is entitled to AEDPA deference. *Harris*, 941 F.3d at 978. Thus, the AEDPA bars this Court from considering the merits of Petitioner's prejudice

claim unless he can demonstrate that the decision was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of fact. 28 U.S.C. § 2254(d).

> ### C. Petitioner has not shown that appellate counsel's performance was deficient. Moreover, the OCCA's determination that Petitioner was not prejudiced by counsel's performance was not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of fact.

In Ground 2 of the Petition, Petitioner, relying largely on the substance of the argument presented in Ground 1, essentially argues that his direct appeal counsel was unconstitutionally ineffective for failing to utilize the Supreme Court's decision in *Wade* when she challenged the suggestiveness of the lineup in Proposition 1 of the direct appeal brief. Doc. 1, Petition, pp. 15–16; Exhibit 2 at 7–11. As addressed above, however, *Wade* is largely about whether an identification procedure is overly suggestive, while in Petitioner's case all parties *agreed* the identification procedure was overly suggestive. The critical question, and the issue addressed by the state district court, was whether, despite the suggestive nature of the lineup, Mr. Gooden's in-court identification of Petitioner was irreparably harmed. The state district court concluded it was not. Exhibit 8, Mot. Tr. 7/18/2016 27. And because—despite Petitioner's contentions—*Wade* does not mandate the per se exclusion of an in-court identification following a suggestive lineup, Petitioner essentially faults counsel for failing to raise a baseless claim. *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000) ("If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel.").

Appellate counsel was not ineffective for declining to retread the same ground as trial-level defense counsel during pre-trial proceedings or make a baseless claim that *Wade* created a per se exclusionary rule, and instead focus on challenging whether the state district court's reliability determination ultimately held out at trial. Thus, even on *de novo* review, Petitioner has not shown counsel was deficient under *Strickland*. Moreover, the OCCA's conclusion that appellate counsel's failure to argue *Wade* as Petitioner suggests did not prejudice him is not contrary to, or an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts.

### 1. *Performance Prong.*

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. On appeal, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select among them." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Of course, "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id.* And counsel's performance cannot be deficient for failing to raise a baseless claim. *Jones*, 206 F.3d at 959. Petitioner has not shown that appellate counsel was deficient.

As Petitioner himself notes, Doc. 1, Petition, p. 8, trial counsel raised the *Wade* decision in a pre-trial motion seeking to exclude Mr. Gooden's identification. Exhibit 9, O.R. 79–85. At the pre-trial hearing, the state district court agreed with trial defense counsel that the photographic lineup was "suggestive," but ultimately concluded that, under

the "totality of the circumstances," there was not a substantial likelihood of misidentification. Exhibit 8, Mot. Tr. 7/18/2016 27). At that point, *Wade* had served its function—the trial court had recognized the suggestive nature of the lineup and made a pre-trial reliability determination on whether the witness should be permitted to identify Petitioner in-court during the trial.[14] As noted above, defense counsel then vigorously cross-examined Mr. Gooden at trial, impeaching him with his prior identification of Mr. Davis and the circumstances of his first identification of Petitioner.

Appellate defense counsel, in receipt of both pre-trial and trial-stage proceedings, essentially recognized that the legal question of suggestiveness was already settled in Petitioner's favor, noting that the trial court had admitted the lineup was overly suggestive. Exhibit 2 at 7 (quoting Exhibit 8, Mot. Tr. 7/18/2016 27). Discussion of *Wade* and the circumstances the Supreme Court had previously recognized as suggestive was unnecessary. Moreover, contrary to Petitioner's assertions, both here and in Ground 1, *Wade* does not create a per se rule of exclusion for in-court identifications following overly suggestive pre-trial lineups. Doc. 1, Petition, pp. 12–13, 16. Indeed, *Wade* itself eschews a per se rule. *Wade*, 388 U.S. at 240–41.

Appellate defense counsel then, explicitly recognizing that "even an improperly suggestive identification may be admissible if, under the totality of the circumstances, the identification was reliable even though the procedure was suggestive," reasonably

---

[14] Respondent would note that *Wade* concerned the absence of counsel during an in-person lineup at which the defendant was present. 388 U.S. at 230–38. The lineup in this case was photographic in nature, Petitioner was not personally present, and his right to counsel was not implicated.

proceeded to challenge the trial court's reliability conclusion in light of what Mr. Gooden and Sergeant Lunn testified to at trial. Exhibit 2 at 9–10. Appellate defense counsel cited, listed, and applied the factors the Supreme Court recognized in *Brathwaite* to Petitioner's case, arguing that the factors weighed against Mr. Gooden's reliability. Exhibit 2 at 9–10 (citing *Brathwaite*, 432 U.S. at 114). Appellate counsel's decision to focus on the legally relevant question, rather than address one that had already been resolved in Petitioner's favor, as well as declining to rely on *Wade* to make an assertion the text of the opinion soundly rejects, is not deficient performance, and is certainly justifiable as sound appellate strategy. *Strickland*, 466 U.S. at 690. Petitioner has not shown appellate counsel's performance was deficient.

### 2.  *Prejudice Prong.*

Notwithstanding the *de novo* review of *Strickland*'s performance prong, because the OCCA clearly determined Petitioner failed to show *Strickland* prejudice, this Court should "apply § 2254(d)'s deferential standard of review on the prejudice prong." *Harris*, 941 F.3d at 976. *See also Porter*, 558 U.S. at 40 ("Because we find [petitioner's] counsel deficient, we must determine whether the Florida Supreme Court *unreasonably applied Strickland* in holding [petitioner] was not prejudiced by that deficiency." (emphasis added)).

Thus, the OCCA's determination that Petitioner had not shown he was prejudiced by appellate counsel's performance is subject to § 2254(d), and Petitioner has not shown that the OCCA's prejudice determination was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts before it. On federal habeas review of a state court's merits rejection of a *Strickland* claim,

"[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schririo v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

To show prejudice under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. Reliance on *Wade* would have been, at best, superfluous to Petitioner's direct appeal claim. As noted above, *Wade* itself holds that a finding of suggestiveness is not a per se bar to admissibility. *Wade*, 388 U.S. at 240. Moreover, as the suggestiveness label was not in question, the only issue left to contest was whether, under the totality of the circumstances, there was a substantial likelihood of misidentification such that Mr. Gooden's in-court identification should have been excluded at trial. *Perry*, 565 U.S. at 238–39. Even if direct appeal counsel had utilized *Wade*, and even if the OCCA explicitly stated that the photographic lineup fell into a situation covered in *Wade*, the OCCA still would have had to apply the factors from *Brathwaite* and *Perry* to determine whether relief was warranted. Which, as noted in the response to Ground 1, the OCCA clearly and reasonably did, rejecting Petitioner's claim. Exhibit 1 at 3. There is not a reasonable probability that anything about Petitioner's direct appeal would have transpired differently had direct appeal counsel cited *Wade*.

"When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, [federal habeas courts] look to the merits of the omitted issue. If the

omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *Jones*, 206 F.3d at 959. As noted above, the Court in *Wade* was clear: "a per se rule of exclusion of courtroom identification would be unjustified." *Wade*, 388 U.S. at 240. Had direct appeal counsel asserted, contrary to the explicit text of the opinion in *Wade*, it created a rule of per se exclusion, there is no chance at all of a different outcome, let alone a "substantial" likelihood. *Richter*, 562 U.S. at 112.

Appellate counsel's actions here do not demonstrate deficiency even under *de novo* review. Moreover, Petitioner has failed to show any likelihood of a different result at all, let alone a situation where there could be no "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. The OCCA's determination that Petitioner had "failed to demonstrate that the failure to present [the lineup] issue in a different way ha[d] resulted in prejudice" was eminently reasonable. Exhibit 7 at 4.

### D. Conclusion.

The law and the facts here support no conclusion that appellate counsel's performance was deficient under a *de novo* review. Moreover, the OCCA's conclusion that Petitioner had not shown counsel's performance to be prejudicial was clearly reasonable. Petitioner has not shown that the OCCA's decision rejecting his claim was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of fact; it is thus entitled to AEDPA deference. 28 U.S.C. § 2254(d). This Court should thus reject this claim and deny relief.

## **CONCLUSION**

Based upon all of the above argument and authority, Petitioner has failed to meet his burden to show that he is entitled to federal habeas relief. The petition should be denied.

Respectfully submitted,

**MIKE HUNTER**
**ATTORNEY GENERAL OF OKLAHOMA**

**s/ CAROLINE E.J. HUNT**
**CAROLINE E.J. HUNT, O.B.A. #32635**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Fax: (405) 522-4534
Service email: fhc.docket@oag.ok.gov

**ATTORNEYS FOR RESPONDENT**

## CERTIFICATE OF SERVICE

**X**        I hereby certify that on the 3rd day of May, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System.

**X**        I hereby certify that on the 3rd day of May, 2021, I served the attached document by mail on the following, who is not a registered participant of the ECF System:

Carlos James Miera, DOC # 640690
Jim E. Hamilton Correctional Center
53468 Mineral Springs Road
Hodgen, OK 74939

**s/ Caroline E.J. Hunt**